IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN D. GLENN, JR.,<br><br>Defendant. | CRIMINAL ACTION<br>NO. 15-99-1 |

**OPINION**

**Slomsky, J.**                                                                                                          **October 9, 2019**

## I. INTRODUCTION

On March 12, 2015, Defendant John D. Glenn, Jr. ("Defendant") was charged in an Indictment with one count of conspiracy to commit bank fraud and two counts of bank fraud. (Doc. No. 1.) The Indictment concerned, among other things, a property known as "the Waverly Property" and involved a scheme, in which Defendant played a central role, to induce mortgage lenders to make a loan secured by this property through misrepresentations and fraudulent conduct. (Id.) These mortgage lenders were Orton Equities Inc. ("Oroton"), Stout Street Funding LLC ("Stout Street"), and National Capital Management, LP ("National Capital Management"). (Id.) On February 23, 2017, following an eight-day trial, a jury convicted Defendant of conspiracy to commit bank fraud, in violation 18 U.S.C. § 1349, and bank fraud, in violation of 18 U.S.C. §

1

1344[1] and 2.[2]  (Doc. No. 141.)  On March 13, 2017, Defendant filed a pro se Motion for Judgment of Acquittal or New Trial.  (Doc. No. 151.)  On August 24, 2018, in an Opinion and Order, the Court denied Defendant's pro se Motion, finding that (1) the evidence presented by the Government at trial was sufficient to establish Defendant's guilt beyond a reasonable doubt on all charges, and (2) the interest of justice did not require a new trial.  (Doc. No. 232.)

---

[1]  18 U.S.C. § 1344 provides:

>  Whoever knowingly executes, or attempts to execute, a scheme or artifice-
>
>  (1) To defraud a financial institution; or
>
>  (2) To obtain any of the moneys, funds, credits, assets, securities, or other property owned by or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representation, or promises;
>
>  shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1349 provides:

>  Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

[2]  18 U.S.C. § 2 provides:

>  (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
>  (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

On August 29, 2018, Defendant was sentenced to serve 168 months' imprisonment to be followed by five years of supervised release. (Doc. No. 237.) Restitution of $981,717.70 and a special assessment of $300 were ordered to be paid. (Id.) That same day, Defendant appealed his conviction and sentence to the Third Circuit Court of Appeals. (Doc. No. 234.)

Despite his case being on appeal, Defendant filed on January 7, 2019 a second pro se Motion for Acquittal/New Trial, this time under Federal Rule of Criminal Procedure 33(b)(1) ("Newly Discovered Evidence").[3] (Doc. No. 259.) In this second pro se post-trial Motion, Defendant claims that the three victim mortgage lending companies in this case were not financial institutions under the bank fraud statutes because they were "hard money lenders."[4] Defendant contends that he learned of this fact after reading the trial transcripts.[5] (Doc. No. 260 at 34.) As such, he claims that this information was "newly discovered" and therefore his current claim about the lenders not being financial institutions is timely. Defendant also asserts that correspondence he received from the Federal Deposit Insurance Corporation ("FDIC") on March 7, 2019, stating that Oroton, Stout Street, and National Capital Management were not affiliated with an FDIC

---

[3] Federal Rule of Criminal Procedure 33(b)(1) provides as follows:

> Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

[4] "A hard-money lender is one that lends money as a last resort to borrowers who cannot get loans from other mainstream institutions because of severe time constraints or other reasons, such as lack of acceptable credit." Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc., 245 F. App'x 161, 163 (3d Cir. 2007).

[5] It is difficult to discern whether Defendant read the trial transcript before or after filing his appeal. The transcripts were docketed on April 10, 2017. (Doc. Nos. 155-162.)

3

insured institution, is also "newly discovered evidence" supporting his claim that the victim companies were not financial institutions under the bank fraud statutes.

On May 5, 2019, the Third Circuit stayed Defendant's appeal and directed this Court to address and dispose of Defendant's second Motion for Acquittal/New Trial. (Doc. No. 264.) On June 11, 2019, the Government filed a Response to Defendant's post-trial motion. (Doc. No. 269.) In its response, the Government contends that when the bank fraud statutes and associated definitional statutes are examined, the victim companies undoubtedly were "financial institutions." Moreover, the Government claims that Defendant had ample opportunity to raise his challenge to the status of the victim mortgage lenders much earlier in the case and for this reason the evidence he relies upon is not newly discovered. The Court agrees with the Government on both points, albeit for a modified reason on the second point regarding the effect of what Defendant contends is his new evidence, and therefore Defendant's second motion for a new trial and/or acquittal will be denied.[6]

## II. BACKGROUND

### A. The Indictment and the Scheme to Defraud Three Mortgage Lending Businesses

On March 12, 2015, a grand jury returned a three-count Indictment against Defendant. (Doc. No. 1.) The Indictment charged him with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and two counts of bank fraud, in violation of 18 U.S.C. § 1344 and 2. Count I states in part:

---

[6] After the Third Circuit granted Defendant's motion to stay his appeal pending the disposition of his second Motion for Acquittal/New Trial, Defendant filed additional motions, including a Motion for an Evidentiary Hearing (Doc. No. 281), a Motion for Bail (Doc. No. 283), a Motion for Reconsideration of Defendant's Motion to Challenge Federal Jurisdiction (Doc. No. 284), and two Petitions for Criminal Referral (Doc. No. 287; Doc. No. 288). Defendant's subsequent motions and petitions will be denied because they are premised on the argument that the victim companies are not financial institutions, a claim being rejected in this Opinion.

From in or about June 2010 through at least September 2010, in the Eastern District of Pennsylvania, and elsewhere, defendant

JOHN D. GLENN, JR.,

knowingly and willfully conspired and agreed, together and with Otis M. Johnson[7] and others known and unknown to the Grand Jury, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud <u>Oroton, Stout Street and National Capital, which are mortgage lending businesses</u>, and to obtain monies owned by and under the care, custody and control of those mortgage lending businesses by means of materially false and fraudulent pretenses, representations and promises, in violation of 18 U.S.C. § 1344.

(Doc. No. 1 ¶ 11.) (Emphasis added.)

Count II states in part:

In or about June 2010 through at least September 2010, in the Eastern District of Pennsylvania, defendant

JOHN D. GLENN, JR.,

together with Otis M. Johnson, and others known and unknown to the Grand Jury, knowingly executed, and aided and abetted the execution of, a scheme to defraud <u>Stout Street, a mortgage lending business</u>, to obtain monies owned by and under the care, custody and control of that financial institution by means of materially false and fraudulent pretenses, representations and promises.

(<u>Id.</u> at 11 ¶ 2.) (Emphasis added.)

And Count III states in part:

In or about August 2010 through at least September 2010, in the Eastern District of Pennsylvania, defendant

JOHN D. GLENN, JR.,

together with Otis M. Johnson, and others known and unknown to the Grand Jury, knowingly executed, and aided and abetted the execution of, a scheme to defraud <u>National Capital, a mortgage lending business</u>, to obtain monies owned by and

---

[7] Otis Johnson was the proprietor of a real estate title company, Mabstract, LLC, and was charged in an Information with conspiracy to commit bank fraud and mail fraud, and with the substantive charges of mail fraud, bank fraud, and aiding and abetting. Information, <u>United States v. Johnson</u>, Crim. A. No. 13-554 (E.D. Pa. Oct. 11, 2013). Johnson pled guilty and testified at Defendant's trial as a Government witness. He was a coconspirator in this case.

under the care, custody and control of that financial institution by means of materially false and fraudulent pretenses, representations and promises.

(Id. at 13 ¶ 2.) (Emphasis added.)

## B. Overview of the Scheme to Defraud Three Mortgage Lending Businesses

In mid-2010, a residential property ("the Waverly property") located in Bryn Mawr, Pennsylvania was in foreclosure. (Id. at 1 ¶ 1.) Michael Meehan, who co-owned the property with his then-wife, Karen Meehan, sought to sell it by way of a short sale to avoid foreclosure.[8] (Id.) Initially, they entered into an agreement of sale of the Waverly property for $856,431 with a Thomas Cappie. (Doc. No. 157 at 17:17-20:2.) Cappie, however, was unable to secure financing to complete the transaction. (Id. at 20:17-21:2). As a result, Cappie assigned his interest to Defendant, who had agreed to purchase the Waverly property. (Id. at 22; Doc. No. 1 at 1 ¶¶ 2-3.)

To secure funding for the purchase, Defendant applied for loans from the three mortgage lending businesses: Oroton, Stout Street, and National Capital Management. (Doc. No. 1 at ¶ 13.) To do so, he held himself out as the principal of two businesses, International Small Business Network, LLC ("ISBN") and SSJ Realty, LLC ("SSJ Realty"). He also claimed that he was a successful real estate investor to further induce the companies to make the loans. (Id. ¶ 3.)

### 1. Scheme to Defraud Oroton

In June 2010, Defendant applied for a loan of $1.6 million under Cappie's name with Oroton. (Id. at 5 ¶ 1.) Defendant told the Oroton loan officer that the purpose of the loan was to finance the purchase of the Waverly property from Meehan to Cappie, even though Cappie was no longer part of the Waverly transaction. (Id.) Defendant represented that his company, ISBN, would then purchase the property from Cappie for $1.85 million with funds it had received from

---

[8] In real estate transactions, a short sale is when a holder of a lien on a property agrees to release the lien and accept a sale of the property in which the proceeds of the sale are less than the amount of the lien.

6

another lender, Stout Street. (Id.) In reality, Stout Street had not agreed to such a transaction. Defendant also provided Oroton with another agreement of sale between Cappie as the seller and Shannen Kurz and ISBN as the buyers.[9] (Doc. No. 157 at 103:5-10.)

Oroton agreed to loan the $1.6 million contingent on the second sale of the Waverly property to ISBN. (Doc. No. 1 at 6 ¶ 3.) On July 7, 2010, the closing for the loan took place. (Id. ¶ 4.) Defendant, along with a representative of Oroton, Cappie, Michael Meehan, and Otis Johnson attended the closing. (Id.) Before the closing was complete and Oroton wired the funds, the Oroton loan officer discovered that the actual payoff amount of the existing mortgages was only approximately half the amount of the Oroton loan about to be committed. (Id.) He also was unable to verify the Stout Street $1.85 million loan commitment. (Id.) Ultimately, Oroton declined to fund the loan. (Id. ¶ 5.) Thus, Oroton is not a named victim in a substantive bank fraud charge.

### 2. Scheme to Defraud Stout Street

Meanwhile, also in June 2010, Defendant approached Stout Street for a $480,000 loan to finance the same Waverly property. (Id. at 7 ¶ 6.) Defendant sought the loan purportedly on behalf of ISBN and represented that Shannen Kurz, as the vice president of ISBN, would be the named borrower. (Id. ¶ 8.) He provided Stout Street with an agreement of sale of the Waverly property for $800,000 showing Michael Meehan as the seller and Kurz, on behalf of ISBN, as the buyer. (Doc. No. 158 at 19:10-25.) The document was notarized by Defendant. (Id. at 24:8-17.) Defendant also submitted ISBN's purported corporate resolution to show that Kurz had authority to bind the company in real estate transactions, as well as ISBN's articles of organization, IRS tax

---

[9] Shannen Kurz testified that she did secretarial work for Defendant on a per assignment basis. (Doc. No. 158 at 125:18-29, 126:18.) She stated that she had limited contact with Defendant during summer 2010. (Id. at 127:24-128:5.) Kurz testified that she never had an official position with ISBN or had any authority to bind ISBN on any contract and that she never signed documents on behalf of ISBN. (Id. at 130:4-17.)

7

form, operating agreement, and certificate of formation to prove the company's legitimate LLC status. (Id. at 33:15-35:6.)

On July 19, 2010, Stout Street approved the loan of $480,000 to ISBN to finance the purchase of the Waverly property and wired the funds to an escrow account maintained by Otis Johnson's title company, Mabstract. (Doc. No. 1 at 7 ¶ 9.) This loan was to be secured by a first position mortgage on the property. (Id.) Any prior existing mortgages were to be satisfied at closing with the funds from Stout Street. (Id.) Johnson, the title agent, with the complicity of Defendant, handled this settlement of the Waverly transaction and falsely represented on a HUD-1 settlement document[10] that Shannen Kurz, on behalf of ISBN, was the buyer and that Michael and Karen Meehan were the sellers. (Id. ¶ 10, Doc. No. 158 at 35:11-35:3, 85:11-19.) The settlement document also falsely showed that Defendant provided $450,000 in earnest money towards the Waverly property purchase and that the sellers provided $53,548 to cover costs. (Doc. No. 1 ¶ 11.)

Stout Street understood that the $480,000 loan was to be used to purchase the Waverly property and would be distributed in strict accordance with the settlement document instructions. (Id. at 8 ¶ 13.) This was not done. Instead, Defendant and Johnson agreed to keep the funds in the Mabstract escrow account. (Id. ¶ 14.) At Defendant's direction, Johnson deposited $40,000 of the funds into the business bank account of Defendant's childhood friend, Hassan Shaheed.[11]

---

[10] HUD refers to the United States Department of Housing and Urban Development. A HUD-1 is a standardized form used in real estate transactions to list all fees and costs charged to a borrower and seller in connection with obtaining a real estate loan and the distribution of the money.

[11] Hassan Shaheed is Defendant's childhood friend who had a business banking account for his company, International Construction Specialists, Inc. (Doc. No. 159 at 45:1-8.) During Defendant's trial, Shaheed testified that he permitted Defendant to deposit money into Shaheed's business banking account and wrote checks at Defendant's direction. (Id. at 50:6-

(Id. ¶ 15.) Shaheed confirmed at trial that this money went to Defendant. (Doc. No. 159 at 49:3-50:24.)

### 3. Scheme to Defraud National Capital Management

Later on, in August 2010, Defendant also sought a loan to purchase the Waverly property from National Capital Management. (Doc. No. 1 at 9 ¶ 16.) This time, he held himself out as the principal of SSJ Realty, LLC and applied for a loan in the amount of $550,000. (Id.) The loan was to be secured by a first position mortgage on the Waverly property. Along with his application, Defendant provided the National Capital Management loan officer with a personal financial statement listing his assets and liabilities (Doc. No. 158 at 167:19-168:3, 170:10-24), an agreement of sale showing Michael Meehan as the seller and SSJ Realty, LLC as the buyer (Id. at 171:7-25), and his own federal tax returns (Id. at 174:3-175:177:9).

National Capital Management required that Defendant be represented by counsel and further required an opinion of counsel. (Id. at 179:16-180:10.) Defendant provided such a letter, which National Capital Management viewed as insufficient. (Id. at 180:4-14.) The loan officer at National Capital Management then spoke with Defendant's counsel who requested from the officer a boilerplate version of a standard letter with the opinion of counsel. (Id. at 180:15-181:1.) The loan officer provided the letter and Defendant's counsel subsequently sent back a completed version. (Id. at 181:5-8.) The letter, dated August 26, 2010 and written by an employee of counsel, indicated that SSJ Realty was a valid LLC operating in good standing under the laws of Pennsylvania. (Id. at 181: 15-24; Gov't Ex. 7-8.)

---

24.) He also provided cash from the account to Defendant at Defendant's direction. (Id. at 52:16-24.)

On August 27, 2010, National Capital Management approved the loan and deposited a total of $550,000 in the Mabstract escrow account. (Doc. No. 1 at 9 ¶ 18.) At the closing, a false settlement document was created, showing Michael and Karen Meehan as the sellers and Defendant as the buyer with a sale price of $855,000 for the Waverly property. (Doc. No. 158 at 186:4-16.) It also showed that Defendant deposited $344,000 in the Mabstract escrow account as earnest money. (Doc. No. 1 at 9 ¶ 17.) He made no such deposit.

Again, Johnson did not distribute the escrow funds as per the settlement instructions and did not pay off the prior existing mortgages on the Waverly property. (Id. ¶ 19.) Rather, Defendant and Johnson agreed to misappropriate the funds lent by National Capital Management. (Id.) On or about August 30, 2010, Defendant directed Johnson to take $80,000 of National Capital Management's funds in the Mabstract escrow account and deposit the money into Hassan Shaheed's business account. (Id. at 10 ¶ 20.) Defendant then directed Shaheed to make deposits and payments to Defendant and other individuals from this account. (Id. ¶ 21; Doc. No. 159 at 47:16-23, 49:20-50:3, 50:6-24.)

### III. ANALYSIS

Two issues are raised in Defendant's second Motion for Acquittal/New Trial. The first is whether under the statutory scheme, the three victim companies were "financial institutions" under the bank fraud statutes. The second is whether Defendant's evidence is "newly discovered evidence" under Federal Rule of Criminal Procedure 33(b)(1).[12]

---

[12] The Court will also address, infra, Defendant's additional motions and petitions that he filed after his second Motion for Acquittal/New Trial was filed.

## A. The Three Victim Companies Were Financial Institutions Under The Bank Fraud Statutes.

Defendant was convicted of bank fraud under 18 U.S.C. § 1344 and 2, and conspiracy to commit bank fraud under 18 U.S.C. § 1349. 18 U.S.C. § 1344 provides as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice-
>
> (1) To defraud a financial institution; or
>
> (2) To obtain any of the moneys, funds, credits, assets, securities, or other property owned by or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representation, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The definition of "financial institution" in 18 U.S.C. § 1344 is found in 18 U.S.C. § 20 ("Financial institution defined"). This section provides:

> As used in this title, the term "financial institution" means--
>
> (1) an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act);
>
> . . .
>
> (10) a mortgage lending business (as defined in section 27 of this title) or any person or entity that makes in whole or in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974.

18 U.S.C. § 27 ("Mortgage lending business defined") sets forth the definition of a mortgage lending business:

> In this title, the term "mortgage lending business" means an organization which finances or refinances any debt secured by an interest in real estate, including private mortgage companies and any subsidiaries of such organizations, and whose activities affect interstate or foreign commerce.

A mortgage lending business does not need to be federally insured to support a conviction under 18 U.S.C. § 1344. See United States v. Fattah, 914 F.3d 112, 185 (3d Cir. 2019) (concluding a company that was not federally insured was a mortgage lending business in upholding conviction under § 1344).[13]

Here, Defendant is not entitled to a new trial or a judgment of acquittal. Oroton, Stout Street, and National Capital Management were "financial institutions" under the bank fraud statutes because they are "mortgage lending businesses,"[14] as indicated by the loan transactions as proven at trial by the Government and by the testimony of the companies' representatives at trial.

---

[13] On August 19, 2019, Defendant submitted a filing titled "Defendant's Judicial Notice to the Court" (Doc. No. 282), requesting this Court take judicial notice of the case United States v. Banyan, 933 F.3d 548 (6th Cir. 2019). Defendant claims this case supports his argument that the victim companies are not "financial institutions" under the statute because the companies did not have deposits that were federally insured. In Banyan, the scheme occurred from 2006 to 2008. Banyan, 933 F.3d at 551. Congress amended 18 U.S.C. § 20 ("Financial institutions defined") on May 20, 2009, adding "mortgage lending business" to the definition of what constitutes a financial institution. See Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111–21, § 2(a)(3). Congress defined "mortgage lending businesses" in 18 U.S.C. § 27, enacted that same day. Id. at §2(b)(1). As the scheme in Banyan occurred from 2006 to 2008, before the amendments were added, the mortgage lending businesses in Banyan were not "financial institutions" under 18 U.S.C. § 1344.

Here, the victim companies were defrauded in 2010. Therefore, the 2009 amendments apply. As stated in the Indictment, the scheme in this case took place in or around June 2010 to September 2010. (Doc. No. 1 ¶ 11; id. at 11 ¶ 2; id. at 13 ¶ 2.) For this reason, Oroton, Stout Street, and National Capital Management were "mortgage lending businesses" in 2010 and fell under the definition of "financial institution."

[14] Defendant also contends the victim companies are not financial institutions because they are "hard money lenders." As noted above, "[a] hard-money lender is one that lends money as a last resort to borrowers who cannot get loans from other mainstream institutions because of severe time constraints or other reasons, such as lack of acceptable credit." Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc., 245 F. App'x 161, 163 (3d Cir. 2007). Despite Defendant's claim, the evidence shows the victim companies are mortgage lending businesses, making them financial institutions for purposes of the bank fraud statutes.

(Doc. No. 157 at 81:13-19;[15] Doc. No. 158 at 62:14-63:2;[16] id. at 162:1-16.[17]) Moreover, Defendant's correspondence with the FDIC indicating that the victim companies were not

---

[15] At trial, Government counsel questioned Nicholas Bentivoglio, who was Chairman and Chief Executive Officer of Oroton in 2010. Bentivoglio testified as follows:

> Q: Does Oroton constitute an organization which finances or refinances debt secured by interest in real estate, including private mortgage companies and subsidiaries of such organizations?
>
> A: Yes, it does.
>
> Q: And do you do business in interstate commerce?
>
> A: Yes, I do.

[16] Government counsel also questioned Terry Dewyse, Stout Street's representative, at trial. Dewyse testified as follows:

> Q: What is Stout Street Funding?
>
> A: It's a private lender that lends to property investors.
>
> Q: Is it an organization which finances or refinances any debt secured by an interest in real estate, including –
>
> A: Yes, sir.
>
> Q: -- including private mortgage companies –
>
> A: Yes, sir.
>
> Q: --and any subsidiaries of such organizations –
>
> A: Yes, sir.
>
> Q: --and whose activities affect interstate commerce?
>
> A: Yes, sir.

[17] In addition, Government counsel questioned Richard Frankel, a partner at National Capital Management at trial. He testified as follows:

> Q: What's the name of your company?

13

affiliated with an FDIC insured financial institution does not exclude the companies from being financial institutions under the statute. A company can be a "financial institution" by being either an "insured depository institution" or a "mortgage lending business." Oroton, Stout Street, and National Capital Management were the latter. Accordingly, the Court will deny Defendant's second Motion for Acquittal/New Trial.

### B. Defendant's "Newly Discovered Evidence" Does Not Warrant A New Trial.

Defendant makes two assertions regarding evidence that he claims are newly discovered. First, Defendant claims the victim companies are nothing more than "hard money lenders" (Doc. No. 259 at 3) and he learned this after he read the trial transcript (Doc. No. 260 at 34). Second, after filing his second post-trial Motion for Acquittal/New Trial, Defendant corresponded with the FDIC and learned the victim companies were not affiliated with an FDIC insured financial institution. (Doc. No. 280 at 17.) For the reasons below, neither of Defendant's proffers of new

---

> A: National Capital Management Partners.
>
> Q: Is that your company?
>
> A: I'm one of the partners in that company.
>
> Q: Where was your part – where is your business located?
>
> A: We're in Fort Washington, Pennsylvania.
>
> Q: And where do you do business?
>
> A: We do business primarily in Pennsylvania and New Jersey.
>
> Q: Would you indicate whether your business is an organization which finances or refinances any debt secured by an interest in real estate, including private mortgage companies and any subsidiaries of such organizations and whose activities affect interstate commerce?
>
> A: We are.

evidence warrant the relief he requests because the victim companies are still financial institutions under the bank fraud statutes.

Under Federal Rule of Criminal Procedure 33(a), the rule governing new trials, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Five requirements must be met before a court may grant a new trial based on newly discovered evidence:

> (a) the evidence must be in fact newly discovered, i.e. discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Quiles, 618 F.3d 383, 388-89 (3d Cir. 2010) (citing United States v. Saada, 212 F.3d 210, 216 (3d Cir. 2000)). Evidence is not "newly discovered" if that evidence comes to light at trial. See United States v. Tejeda, No. 17-30173, 2019 WL 3801530, at *2 (9th Cir. Aug. 13, 2019); Hellman v. United States, No. CV 16-8561 (FLW), 2019 WL 2171477, at *6 (D.N.J. May 20, 2019).

Regardless of when Defendant discovered the evidence that he relies upon, it is not of such nature that it would probably produce an acquittal on retrial. Oroton, Stout Street, and National Capital Management are in the mortgage lending business, and as such are financial institutions under the bank fraud statutes. There was no need for them to be affiliated with the FDIC in order to be financial institutions under the statutes.

Furthermore, whether the victim companies advanced "hard money" would not change the outcome in this case because the evidence was overwhelming that Defendant engaged in a fraud on these companies. Thus, because Defendant cannot satisfy a critical element of the "newly

discovered evidence" test, there is no need to discuss the other factors required to show that evidence is newly discovered and warranting a new trial.[18] Accordingly, a new trial will not be awarded based on Defendant's newly discovered evidence claim.

### C. Defendant's Additional Motions Filed After Remand Will Be Denied.

Although the Third Circuit stayed Defendant's appeal following the filing of his second Motion for Acquittal/New Trial (Doc. No. 259) and its supplement (Doc. No. 260), Defendant has since taken the liberty of filing three additional motions and two petitions with this Court. As noted, these motions are premised on the basis that the three victim companies in this case were not financial institutions under the bank fraud statutes.

On August 12, 2019, Defendant filed a Motion for an Evidentiary Hearing (Doc. No. 281) requesting a hearing on his Motion to Challenge Federal Jurisdiction (Doc. No. 276). This motion will be denied because the Court already denied Defendant's Motion to Challenge Federal Jurisdiction on August 8, 2019. (See Doc. No. 279.)

Additionally, Defendant has filed a Motion for Bail (Doc. No. 283), a Motion for Reconsideration of his Motion to Challenge Federal Jurisdiction (Doc. No. 284), and two Petitions for Criminal Referrals (Doc. No. 287; Doc. No. 288). In these filings, he contends that he should be granted bail, his Motion to Challenge Federal Jurisdiction should be reconsidered, and Government counsel who prosecuted his case should be referred for criminal prosecution. These motions are frivolous, without merit, and will be denied.

---

[18] In the Government's Response to Defendant's second post-trial Motion for Acquittal/New Trial (Doc. No. 269), the Government argues that Defendant has not established any of the elements of the newly discovered evidence test.

Bail is not warranted in this case and Defendant's Motion for Bail will be denied. There is a presumption against bail pending appeal. United States v. Miller, 753 F.2d 19, 22 (3d Cir. 1985) To overcome this presumption, Defendant must establish all of the following:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
> (2) that the appeal is not for purpose of delay;
>
> (3) that the appeal raises a substantial question of law or fact; and
>
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

United States v. Fattah, 224 F. Supp. 3d 443, 446 (E.D. Pa. 2016) (quoting Miller, 753 F.2d at 24). Defendant has the burden of proving each of these elements. Miller, 753 F.2d at 24.

Again, Defendant contends that he should be granted bail because the victim companies were not financial institutions under the bank fraud statutes. This argument is erroneous for the reasons extensively discussed above. Moreover, Defendant's record of prior convictions shows that he is a danger to the community and given the sentence imposed here he may flee. Thus, Defendant's Motion for Bail will be denied.

Further, Defendant's Motion for Reconsideration of his Motion to Challenge Federal Jurisdiction will be denied. Motions for reconsideration are made to "correct manifest errors of law or fact, or [ ] present newly discovered evidence." United States v. Rashid, No. CIV.A.95-7396, 2009 WL 928571, at *2 (E.D. Pa. Apr. 7, 2009), aff'd, 373 F. App'x 234 (3d Cir. 2010) (citing Max's Seafood Café v. Max Qunteros, 176 F.3d 669, 677 (3d Cir. 1999). "A prior decision may be altered or amended only if the party seeking reconsideration establishes at least one of the following grounds (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear

17

error of law or fact or to prevent manifest injustice." Id. Here, there has been no intervening change in controlling law, there is no new evidence that was not available when the Court denied Defendant's Motion to Challenge Federal Jurisdiction, and there was no clear error of law or fact that would create a manifest injustice. Accordingly, Defendant's Motion for Reconsideration will be denied.

Finally, Defendant's Petitions for Criminal Referral also will be denied. Defendant requests that the Court initiate an inquiry into his prosecution and provide a criminal referral for prosecution against Government counsel. The prosecutors in this case did nothing inappropriate to warrant the drastic relief Defendant requests. This is buttressed by the fact that under the law the three victim companies in this case were mortgage lending businesses.

## IV. CONCLUSION

For the foregoing reasons, Defendant's second Motion for Acquittal/New Trial (Doc. No. 259; Doc. No. 260), Motion for an Evidentiary Hearing (Doc. No. 281), Motion for Bail (Doc. No. 283), and Motion for Reconsideration (Doc. No. 284) will be denied. Defendant's Petitions for Criminal Referral (Doc. No. 287, Doc. No. 288) will also be denied. An appropriate Order follows.