IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

JOHN D. GLENN, JR.,

            Defendant.

CRIMINAL ACTION
NO. 15-99

**OPINION**

**Slomsky, J.**                                                                                    **July 28, 2021**

## I.  INTRODUCTION

Pro se Defendant John D. Glenn Jr. ("Defendant"), who is serving a 168-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the compassionate release statute.  In his Motions[1] (Doc. Nos. 325-26, 330), Defendant asks the Court to "reduce his sentence to time served."  (Ids. at 14.)  He argues that the Court should grant his Motions based on "extraordinary and compelling reasons, that is the coronavirus pandemic" as well as the conditions at his prison and his underlying health conditions that place him at an increased risk of harm from the COVID-19 pandemic.  (Id. at 1.)  He also contends that his release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors because of the length of time he has already served, the nature of his non-violent offense and his many accomplishments while incarcerated.  (See id. at 13.)  The Government opposes Defendant's Motions, citing Defendant's criminal history, his history of recidivism, his ability to effectively manage his health conditions while incarcerated, the numerous measures the Bureau of Prisons ("BOP") has implemented to

---

[1]   Defendant filed his Motions for Compassionate Release on March 19, March 22, and April 14, 2021.

prevent the spread of COVID-19 in its facilities, and the fact that he will soon receive his second dose of the COVID-19 Moderna vaccine.  (See Doc. No. 331 at 5.)  For reasons that follow, Defendant's Motions (Doc. Nos. 325-26, 330) will be denied.

## II.   BACKGROUND

### A.   Defendant's Criminal History

Defendant is presently incarcerated at United States Penitentiary, Leavenworth ("USP Leavenworth") in Northeast Kansas for his role in a scheme to defraud three mortgage lending businesses by falsely holding himself out as a successful real estate investor.  (See Doc. No. 331 at 1.)  During four months in 2010, Defendant "submitted forged and fraudulent documents to [three] mortgage lending businesses in order to induce the businesses to loan him hundreds of thousands of dollars to purchase a distressed residential property in Bryn Mawr, Pennsylvania[.]" (Id.)  Defendant and a coconspirator then diverted money from the real estate closings to themselves, rather than satisfying the prior mortgages and liens on the property.  (See id.) Altogether, Defendant attempted four separate mortgage frauds but only two were successful.  (See id.)  Therefore, in determining the Total Offense Level, the amount attributable to the two successful frauds, $2,630,000, was used at sentencing.  (See id.)

Earlier, on February 23, 2017, a jury found Defendant guilty on one count of conspiracy to commit bank fraud and aiding and abetting the conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 and 18 U.S.C. § 2 (Count One), and two counts of bank fraud and aiding and abetting bank fraud, in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 2 (Counts Two and Three). (See id. at 2.)  On August 29, 2018, the Court sentenced Defendant to 168 months' incarceration, followed by 5 years supervised release.  (See id.)  He has served approximately 75 months of his

sentence,[2] and his minimum release date is October 18, 2027.  (See id. at 3.)  Defendant has received two minor disciplinary infractions while incarcerated.  (See id.)

Defendant has a lengthy criminal history.  (See id. at 2-3.)  He incurred twenty-one separate convictions in state and federal courts.  (See id. at 2.)  He also committed the instant offense while on supervised release.  (See id. at 3.)  The Government summarized his prior infractions in its Response in Opposition to Defendant's instant Motions:

> In 1982, at age 26, he was convicted . . . for mail fraud based on a scheme to steal $27,000 from an insurance company.  In 1987, at age 32, he was convicted in state court of passing bad checks.  In 1997 and 1998, at age 43, he was convicted multiple times of passing substantial bad checks.  In 1999, at age 43, he was convicted of theft based on an effort to steal over $9,000 from US Airways using stolen airline ticket stock.  That same year, he stole over $50,000 in advertising services by paying with bad checks and stole over $21,000 in video conferencing equipment in the same manner.  In 2002, at age 47, he was convicted . . . of conspiracy to commit mail fraud, and sentenced to 42 months' imprisonment . . . .  As a result of that federal offense and a series [of] subsequent local convictions . . . he remained in custody during much of the period until late 2012.

(Id. at 2-3.)

## B.    Defendant's Pro Se Motion for Compassionate Release

On July 22, 2020, Defendant requested home confinement from BOP, which was denied. (See Doc. No. 331 at 3.)  On July 30, 2020, he filed a pro se Motion for Compassionate Release in this Court, which was denied for failure to exhaust administrative remedies.  (See id.)  In December 2020, Defendant initiated a second request for release from incarceration to the Warden at USP Leavenworth.  (See id.)  The Warden denied his request for home confinement without referencing compassionate release.  (See id. at 4.)

On March 19, March 22, and April 14, 2021, Defendant filed three instant pro se Motions

---

[2]    Defendant has served approximately 66 months of his 168-month sentence and expects to receive approximately 9 months' credit for good conduct.  (See Doc. No. 331 at 3.)

for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), the Motions now before the Court.  (Doc. Nos. 325-26, 330.)[3]  In the Motions, Defendant states that he suffers from "type 2 diabetes mellitus, heart failure and coronary artery disease." (Doc. No. 330 at 8-9.) He also claims that his "age unquestionably exposes him to a higher risk from COVID-19." (Id. at 9.)  Moreover, he emphasizes that "the fact[s] of [his] race and incarceration play in the higher risk he faces from the coronavirus."  (Id. at 11.)  Defendant also contends that "especially, given USP Leavenworth's inability to get the coronavirus under control, the continuing surges of cases at USP Leavenworth and nationwide, as well as new 'variants of the pandemic,'" all support his compassionate release. (Id. at 13.)  Further, he contends that other courts in this district "have concluded that a defendant's vulnerability to COVID-19 with chronic diseases which make them a '[h]igh [r]isk' of death or serious health problems, particularly when weighed in the balance with favorable § 3553 (a) factors[,] . . . constitutes an 'extraordinary and compelling reason' to grant compassionate release." (Id. at 5.)

Regarding the § 3553(a) sentencing factors, Defendant notes that he has served six years of his sentence.  (See id. at 13.)  He also lists as compelling reasons his "non-violent offense, his superior record in custody and evidence of his extraordinary effort at rehabilitation, his strong family support, community ties and release plan . . . [all are] extraordinary and compelling reasons . . . to grant [his] motion and reduce his sentence to time served."  (Id. at 13-14.)  Further, he asserts that "he actively engaged in educational, vocational, and spiritual opportunities" while incarcerated for the instant offense.  (Id. at 12.)  He cites his goal of "plant[ing] seeds of encouragement, love and hospitality in the hearts and minds of the youth, not only in [his] family, but in [his] community as well."  (Id. at 13.)  Moreover, he avers that "further incarceration is

---

[3]   All three Motions are substantively identical, and the Court will discuss them in tandem.

simply not necessary to protect the public given the amount of time that [Defendant] has already served and the impressive rehabilitation efforts he has consistently made during his incarceration." (Id. at 11.)

**C.     The Government's Response in Opposition to Defendant's Motion**

On May 10, 2021, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 331.)  In its Response, the Government argues that Defendant's Motion should be denied because "[D]efendant has been vaccinated against COVID-19 and therefore does not present an extraordinary and compelling reason permitting relief."  (Id. at 1.)  "Further, he is a decades-long recidivist who has served less than half of his sentence for significant fraudulent conduct."  (Id.)

Regarding Defendant's medical conditions, the Government attached his sealed medical records to its Response, which confirm the conditions he describes.  (See id. at 4-5.)  But the Government notes that his conditions are "being treated with medication provided by the institution."  (Id. at 5.)  Further, "[D]efendant is fully ambulatory and engages in all normal activities of daily living."  (Id.)

Notably, Defendant's medical records show that, despite an initial refusal, he "accept[ed] the Moderna COVID-19 vaccine on March 17, 2021."  (Id.)  Further, "[a]s of the time the [G]overnment obtained the records, he was scheduled for a second dose on the required schedule, and thus [the Government] assume[s] he has now been fully vaccinated."  (Id.)  And due to Defendant's vaccination, the Government avers that "he no longer presents an 'extraordinary and compelling reason'" for his release.  (Id. at 15.)

As for the § 3553(a) sentencing factors, the Government submits that "these considerations—including the [D]efendant's risk of danger to the community, his vaccination, and BOP's strenuous efforts to protect inmates against the spread of COVID-19—counsel strongly

against relief." (Id. at 25.)  Defendant "continues to present a danger to the community [] and should be required to serve the sentence that this Court imposed for his criminal conduct." (Id.) Defendant "defrauded multiple mortgage companies to the tune of more than $1 million." (Id. at 25-26.)  The Government also notes that "[t]his conduct took place when the [D]efendant was 55, and likely suffering from some of the same conditions he presents today" and that "[D]efendant has a lengthy record of criminal conduct." (Id. at 26.)  Finally, the Government concludes that he "fails to demonstrate how release, 75 months into a 168-month sentence for a serious fraud, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense." (Id.)

## III.   DISCUSSION

### A.   The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A).  As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[4]  See § 3582(c)(1)(A)(i).

---

[4]   A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Harris, 973 F.3d 170, 171 (3d Cir. 2020) (holding prisoner need not fully exhaust administrative rights if thirty days pass from warden's receipt of compassionate release request).  In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does

6

The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
>> (i)   extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).   Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.   28 U.S.C. § 994(t).   Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission.   Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
>> (1)  (A)  Extraordinary and compelling reasons warrant the reduction; . . .
>>
>> (2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>>
>> (3)  the reduction is consistent with this policy statement.

---

respond adversely within the thirty days, to then exhaust any available administrative appeals during that period.  See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion.  On December 7, 2020, Defendant sent a request for compassionate release and home confinement to the Warden at USP Leavenworth.  (See Doc. No. 331 at 4.)  Beginning on March 19, 2021, over thirty days after Defendant submitted the request, he filed the instant Motion for Compassionate Release as well as two identical requests.  (See id.) As the Motions are identical, this Court need only discuss the final Motion filed (Doc. No. 330).  Because over thirty days have elapsed from the date of Defendant's request and the filing of the instant Motion, he has met the exhaustion requirement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances.  § 1B1.13 n.1(A)-(C).  This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   Medical Condition of the Defendant
>
> (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii)    The defendant is—
>
>> (I)     suffering from a serious physical or mental condition,
>>
>> (II)    suffering from a serious functional or cognitive impairment, or
>>
>> (III)   experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B)   Age of the Defendant.  The defendant
>
> (i)     is at least 65 years old;
> (ii)    is experiencing a serious deterioration in physical or mental health because of the aging process; and
>
> (iii)   has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

        (C)  Family circumstances.

              (i)       The death or incapacitation of the caregiver of the defendant's minor child or minor children.

              (ii)      The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C).  Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."  § 1B1.13 n.1(D).[5]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ."  United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)).  Since the Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A).  See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19."  United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)).

---

[5]    Although by its express language § 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement.  See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated."  Somerville, 463 F. Supp. 3d at 596.  Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held."  Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction.  See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a).").  Section 3553(a) establishes factors for a court to consider in initially imposing a sentence.  Not every factor is applicable, however, when considering a motion for compassionate release.  In the instant case, the applicable factors are:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed—

    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)  to afford adequate deterrence to criminal conduct;

    (C)  to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

. . . [and]

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6).  Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

## B.    Defendant's Motion for Compassionate Release Will be Denied

Defendant's Motion will be denied.  Even if Defendant's diabetes is an extraordinary and compelling reason for his release, COVID-19 is no longer present to a significant degree at USP Leavenworth.  Further, the relevant § 3553(a) factors weight against a reduction or modification of his sentence.[6]  Each of these conclusions is discussed seriatim.

### 1.    Defendant's Diabetes May Present an Extraordinary and Compelling Reason for His Release

Defendant contends that he has shown an extraordinary and compelling reason for his release because his advanced age, Type II diabetes, heart disease, chronic kidney disease, hypertension and race "put him at serious risk of illness and death, if he is infected by the coronavirus."  (Doc. No. 330 at 8.)

In its Response, the Government submits that race is not an extraordinary and compelling

---

[6]    Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence would be consistent with applicable policy statements in the Sentencing Guidelines.

reason for release.[7]  (<u>See</u> Doc. No. 331 at 15.)  It does concede, however, that Defendant's risk

factors for diabetes, heart disease, chronic kidney disease and hypertension meet the U.S.S.G §

1B1.13 Application Note 1(A) definition of extraordinary and compelling reasons for release.  (<u>See</u>

<u>id.</u> at 15-16); U.S.S.G. § 1B1.13 n.1(A).  However, the Government concludes that "he no longer

presents an 'extraordinary and compelling reason' because he has been vaccinated." (<u>Id.</u> at 15.)

In support, the Government notes that "the vaccine is 95% effective in preventing COVID-19

infection[.]"  (<u>Id.</u> at 16.)  The Government further submit that Defendant received the Moderna

COVID-19 vaccine on March 17, 2021 and "he was scheduled for a second dose on the required

schedule, and thus [the Government] assume[s] he has now been fully vaccinated."  (<u>Id.</u> at 4-5.)

Moreover, it alleges that "[D]efendant is fully ambulatory and engages in all normal activities of

daily living[.]"  (<u>Id.</u> at 5.)[8]

---

[7]  Although "[c]urrent data suggests that African-Americans have been disproportionately affected by COVID-19 hospitalizations and deaths[, i]t is unclear . . . whether race is an independent risk factor" or whether these disproportionate effects are caused by socioeconomic factors.  <u>United States v. Green</u>, No. 05-205, 2020 WL 3642860, at *4 (W.D. Pa. July 6, 2020).

[8]  Despite Defendant's assertion in his Motion that USP Leavenworth is currently experiencing an outbreak of COVID-19, no actual, non-speculative risk of contracting COVID-19 at USP Leavenworth presently exists.  (<u>See</u> Doc. No. 331 at 7.)  In the Government's Response in Opposition filed on May 10, 2021, it notes that "[a]t present, there are no inmates who are reported positive" in the institution out of a total of 1,438 inmates, and "[t]here are 850 current inmates who previously tested positive and have recovered."  (<u>Id.</u>)  As of the filing of this Opinion, there is only one inmate and five staff members at USP Leavenworth who currently have COVID-19.  <u>See</u> COVID-19 Cases, FEDERAL BUREAU OF PRISONS (July 26, 2021), https://www.bop.gov/coronavirus/.  These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ." <u>Id.</u> (emphasis omitted).  Given this information, COVID-19 is no longer present to a significant degree at USP Leavenworth.  For this reason, and because the § 3553(a) sentencing factors weigh against a reduction or modification of Defendant's sentence, his Motion will be denied.  <u>See</u> United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release due to his history of violence and because he has not demonstrated a more than mere speculative risk of exposure to COVID-19 at FCI Fort Dix.").

For purposes of this Motion, the Court will assume, without deciding that Defendant's diabetes presents an extraordinary and compelling reason for compassionate release in light of the COVID-19 pandemic.[9]  Because the Government concedes that Defendant's diabetes presents a COVID-19 risk factor, and the Court will consider this an extraordinary and compelling reason for his release, the Court need not address whether his other medical conditions also meet this threshold.  However, it notes that other courts have rejected claims of extraordinary and compelling reasons based on diabetes, advanced age, hypertension, heart disease and chronic kidney disease.  See, e.g., United States v. Whiteman, No. 15-298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding mild obesity and hypertension fall short of extraordinary and compelling reasons for release); United States v. Kolodesh, 484 F.Supp.3d 245, 247-48 (E.D. Pa. 2020) (denying relief to a 58-year-old defendant who committed a $16 million fraud and who suffers from heart disease, obesity, and other conditions); United States v. Hill, No. 18-271, 2020 WL 4431530 at *1 (E.D. Pa. July 31, 2020) (denying relief to a 57-year old defendant who is obese and has heart disease, but also is a serial fraudster).

Moreover, Defendant has or will soon receive his final dose of Moderna, Inc.'s COVID-19 vaccine.  Courts in this District have denied compassionate release, in part, because the defendant had been—or would soon be—vaccinated against COVID-19.  See, e.g., United States v. Limehouse, No. 08-0223-1, 2021 WL 1387756, at *6 (E.D. Pa. Apr. 13, 2021) ("FCI Cumberland is . . . in the process now of inoculating both its staff members and its inmate population with the COVID-19 vaccines."); United States v. Sloane, No. 16-400, 2021 WL

---

[9]   The CDC notes that diabetes is a COVID-19 risk factor.  See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

1374634, at *1 (E.D. Pa. Apr. 12, 2021) ("To the extent Mr. Slone believes his asthma puts him at risk for COVID-19, the risk is mitigated having received two doses of the effective Moderna vaccine and he otherwise does not present health concerns rising to the level of extraordinary and compelling reasons for release."); United States v. Roper, No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("[T]he [BOP] medical staff is actively treating and successfully managing Mr. Roper's conditions, and, perhaps most importantly, the [BOP] provided the first of two vaccination shots several weeks ago and no one suggests delay in the second shot.  Mr. Roper does not present an extraordinary and compelling reason for his release."); United States v. Ulmer, 2021 WL 844579, at *3 (E.D. Pa. Mar. 5, 2021) ("Ulmer's request for compassionate release has no merit in fact or law.  He presents minor health concerns and his recovery from COVID-19 and vaccination significantly outweigh any issues at FPC Lewisburg.").  Given the holding in these cases, and the vaccines Defendant has received, he has not presented any extraordinary and compelling reasons to justify granting his Motion for Compassionate Release.[10]

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

Assuming, arguendo, that Defendant's diabetes presents an extraordinary and compelling reason for his release, the relevant § 3553(a) factors do not support his compassionate release to home confinement or a sentence reduction.  As a threshold matter, other courts in this District have denied compassionate release in similar cases where, despite extraordinary and compelling circumstances warranting a defendant's release, the § 3553(a) sentencing factors heavily weighed against granting such relief.  See, e.g., United States v. Spivey, 471 F. Supp. 3d 621, 623 (E.D. Pa.

---

[10] Defendant is 65 years old.  (See Doc. No. 331 at 4.)  He does not suffer from a terminal illness or a serious cognitive impairment, and he is not a caregiver to minor children.  See § 1B1.13 n.1(A)-(C).  Thus, the factors listed in the Sentencing Guideline Manual are not relevant here. See id.

14

2020) (footnote omitted) (denying compassionate release based on § 3553(a) sentencing factors despite "assum[ing] . . . that [d]efendant's underlying health conditions . . . present extraordinary and compelling reasons for compassionate release in light of the COVID-19 pandemic"); United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release due to his history of violence . . . ."); United States v. Daniels, No. 15-127, 2020 WL 4674125, at *2-4 (E.D. Pa. Aug. 12, 2020) (denying compassionate release despite Government's concession that defendant's obesity was an extraordinary and compelling reason for release because, inter alia, the risk of exposure to COVID-age 19 at defendant's prison was merely speculative and he continued to be a danger to the community); United States v. Holmes, No. 08-495, 2020 WL 4504440, at *3 (E.D. Pa. Aug. 5, 2020) ("Even if defendant has the requisite serious medical conditions, the [c]ourt's analysis does not end here. . . . [T]he [c]ourt [must] consider the 'factors set forth in section 3553(a) to the extent they are applicable' before [it] may reduce [defendant's] sentence. These factors . . . support the need for [defendant] to serve the sentence imposed.").

Turning to the § 3553(a) sentencing factors and their application to Defendant, the relevant sentencing factors counsel against Defendant's release at this time. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See § 3553(a)(1). Defendant is presently incarcerated for one count of conspiracy to commit bank fraud and aiding and abetting the conspiracy to commit bank fraud and two counts of bank fraud and aiding and abetting bank fraud. (See Doc. No. 331 at 2.) Defendant states that after his release, he hopes "to mentor youth in his community to help them avoid the pitfalls and poor decisions that he has made." (Doc. No. 330 at 13.) However, the Government notes that he "engaged in

fraudulent conduct for decades, notwithstanding repeated convictions and terms of imprisonment." (Doc. No. 331 at 2.) Moreover, it argues that he "committed the instant offense while at liberty in 2010 and on supervised release." (Id. at 3.) Given the nature and circumstances of the underlying offenses, there is no assurance that he would abstain from criminal activity if he were released.

Additionally, the Court has considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served less than one-half of his 168-month sentence. (See Doc. No. 331 at 2-3.) The magnitude of Defendant's crimes warrant the sentence he received.[11] Despite Defendant's contentions that "incarceration is simply not necessary to protect the public[,]" the Government believes that "[D]efendant continues to present a danger to the community[,]" given that "his extensive fraud history garnered him 16 criminal history points, placing him in the highest criminal history category[.]" (Id. at 25-26.) The Government also notes that "this conduct took place when the [D]efendant was 55, and likely suffering from some of the same conditions he presents today." (Id. at 26.) The Court agrees with the Government that, Defendant's release at this point would neither reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes he may commit.

---

[11] In United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3582(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  See § 3553(a)(6). Before sentencing, the applicable guideline range prescribed a sentence of 110-137 months' imprisonment.  (See Doc. No. 196 at 9.)  At sentencing, however, the Government moved for an upward variance based on the need for specific deterrence, citing it as the "only way [the Court can] prevent this [D]efendant from committing frauds[.]" (Doc. No. 254 at 42:14-15)[12]   After the Court heard argument on the Motion, it found that:

> there are warranted reasons not to consider the guidelines [ range].  And certainly[,] the major warranted reason is the number of [Defendant's prior] convictions. . . . [The Court] think[s] this is one case where [the Court] [has] no faith, or very minimal faith that the person won't commit crimes in the future. . . . He's been incarcerated many times and he still committed the crimes that he committed in this case. . . . And for all these reasons, there is a warranted reason to vary up from the sentencing guidelines."

(Id. at 52-53.)  Thus, the Court determined that an upward variance was warranted, resulting in the sentence of 168 months' imprisonment.  (See id. at 56:3.)

At this time, a reduction in Defendant's sentence would frustrate the legislature and Sentencing Commission's goal of offering courts the leeway to impose a sentence that is sufficient but not greater than necessary to serve the goals of sentencing.  Therefore, none of the applicable § 3553(a) factors favor Defendant's release.

---

[12]   Section 3553(a)(2) of the Sentencing Guidelines provides for an upward variance if:

> The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release pursuant to 18

U.S.C. § 3582(c)(1)(A)(i) (Doc. Nos. 325-26, 330) will be denied.  An appropriate Order follows.