IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

JOHN D. GLENN, JR.,

Defendant.

CRIMINAL ACTION
NO. 15-99

## OPINION

Slomsky, J.                                                                 July 6, 2023

### TABLE OF CONTENTS

I.  INTRODUCTION .......................................................................................... 1

II.  BACKGROUND ........................................................................................... 1

  A.  The Indictment .......................................................................................... 1

  B.  The Court's Pro Se Colloquy with Defendant ........................................ 2

  C.  Defendant's § 2255 Motion ................................................................... 14

III.  STANDARD OF REVIEW ........................................................................ 15

IV.  ANALYSIS ................................................................................................. 15

  A.  Appellate Counsel Was Not Constitutionally Ineffective for Failing to Argue
      That the Indictment Was "Jurisdictionally Defective" ............................... 17

  B.  Appellate Counsel Was Not Constitutionally Ineffective for Failing to Raise
      on Appeal an Objection to the Court's Colloquy with Defendant to Determine
      Whether He Knowingly and Voluntarily Waived His Right to Trial Counsel ........ 19

    1.  Legal Framework for Requests to Proceed Pro Se ..................................... 20

    2.  Defendant Knowingly and Voluntarily Waived His Right to Counsel........................ 23

V.  CONCLUSION............................................................................................ 24

I.      **INTRODUCTION**

Before the Court is Defendant John D. Glenn, Jr.'s ("Defendant") pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("the Motion").  (Doc. No. 357.) Defendant was convicted of:  (1) one count of conspiracy to commit bank fraud, and aiding and abetting, in violation of 18 U.S.C. §§ 1349 and 2, and (2) two counts of bank fraud, and aiding and abetting, in violation 18 U.S.C. §§ 1344 and 2.  (Doc. No. 141 at 1-2.)  On August 29, 2018, Defendant was sentenced to 168-months imprisonment.  (Doc. No. 237 at 1-2.)  On March 9, 2021, the Third Circuit Court of Appeals affirmed his sentence.  See United States v. Glenn, 846 F. App'x 110 (3d Cir. 2021), cert denied, 142 S. Ct. 831 (2022).

In the pro se Motion, filed on November 21, 2022, Defendant seeks to have his sentence vacated on all three counts and to have his Indictment dismissed.  (Doc. No. 357 at 13.)  He contends that his appellate counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  (Id. at 4-6.)  On February 16, 2023, the Government submitted a Response in Opposition to Defendant's Motion.  (Doc. No. 362.)  On April 24, 2023, Defendant filed a Reply.  (Doc. No. 366.)

For reasons that follow, Defendant's pro se Motion (Doc. No. 357) will be denied without an evidentiary hearing.  A certificate of appealability will not be issued because Defendant has failed to make a substantial showing of the denial of a constitutional right.

II.     **BACKGROUND**

        A.      **The Indictment**

On March 12, 2015, a federal grand jury returned an Indictment charging Defendant with one count of conspiracy to commit bank fraud, and aiding and abetting (Count One), and two counts of bank fraud, and aiding and abetting (Counts Two and Three).  (See Doc. No. 1.)  The

charges stem from Defendant's scheme to defraud three mortgage lending businesses to fund the purchase of a residential property, referred to as the Waverly property, that was in foreclosure. (See id. at 1.)  The three mortgage lending companies Defendant conspired to defraud are:  (1) Oroton Equities ("Oroton"); (2) Stout Street Funding, LLC ("Stout Street"); and (3) National Capital Management ("National Capital").  (See id. at 3.)  The Indictment alleged that these entities were "mortgage lending business[es] that engaged in interstate commerce and provided loans to fund the purchase of real estate, including residential single family dwellings."  (Id. at 2-3.)

Defendant defrauded these three mortgage lending businesses by, among other things, holding "himself out to be a successful real estate investor specializing in luxury homes" and as a principal of International Small Business Network, LLC ("ISBN") and SSJ Realty, LLC ("SSJ Realty").  (Id. at 2.)  Defendant then "applied for . . . loans from . . . Oroton, Stout Street and National Capital, purportedly to fund the purchase of the Waverly property."  (Id. at 3-4.)  In applying for these loans, Defendant provided the mortgage lending companies with "fraudulent documents . . . including fraudulent agreements of sale that contained the forged signatures of the purported buyers and/or sellers."  (Id. at 4.)  After being approved for the loans, Defendant then diverted funds at the closings on the loans to himself and his co-conspirator, Otis Johnson, rather than satisfy the property's mortgage and liens.  (Id. at 5.)  The only loan that did not close was one he applied for with Oroton Equities.  (Id. at 6.)  Oroton "declined to fund the loan and the closing [on that loan] was terminated."  (Id.)

### B.    The Court's Pro Se Colloquy with Defendant

On October 11, 2016, an on-the-record hearing was held with Defendant on his request to proceed pro se and to represent himself in this case.  (See Doc. No. 111.)  The Court conducted a colloquy with Defendant as required and described by the Third Circuit in United States v. Peppers,

302 F.3d 120 (3d Cir. 2002).[1]  The Court conducted the following colloquy with him to determine whether he knowingly and voluntarily waived his right to counsel:

> THE COURT:  All right.  Mr. Glenn, how old are you?
>
> THE DEFENDANT:  61.
>
> THE COURT:  And how far did you go in school?
>
> THE DEFENDANT:  Four years of college.
>
> THE COURT:  I assume you could read, write and speak English?
>
> THE DEFENDANT:  Yes, I can, Your Honor.
>
> THE COURT:  All right.  You've understood everything I've said thus far?
>
> THE DEFENDANT:  Thus far, yes, sir.
>
> THE COURT:  All right.  Are you presently under the influence of any drugs or alcohol?
>
> THE DEFENDANT:  No, I'm not, sir.
>
> THE COURT:  Do you take any medication?
>
> THE DEFENDANT:  Nothing other than for diabetes, that's about it.
>
> THE COURT:  All right.  And are you receiving any kind of mental health treatment?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  All right.  And is it your decision and your decision alone to represent yourself in this criminal case?
>
> THE DEFENDANT:  That is correct, Your Honor.
>
> THE COURT:  All right.  Now I have to go through some questions in addition to the ones that I've asked already, but I ask a lot of these questions because the law requires me --

---

[1]  As discussed <u>infra</u>, the Court tracked the line of inquiry recommended by the Third Circuit as a "useful framework for the court to assure itself that a defendant's decision to proceed <u>pro se</u> is knowing and voluntary."  302 F.3d at 136.

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  -- to ask the questions.  Have you ever studied law?

THE DEFENDANT:  No, sir.

THE COURT:  Have you ever represented yourself before in a criminal case?

THE DEFENDANT:  No, sir.

THE COURT:  Do you understand that you are charged with the following crimes.  It's a three count indictment.  Count 1 charges you with conspiracy to commit bank fraud.  Count 2 charges you with the actual bank fraud.  Count 3 charges you with actual bank fraud.  Do you understand?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  All right.  And the conspiracy count is in violation of 18 U --

THE DEFENDANT:  This is the conspiracy?

THE COURT:  -- yes, the Count 1, conspiracy to commit bank fraud.

THE DEFENDANT:  Okay.  Aiding and abetting.

THE COURT:  Well, that's not aiding and abetting.  Conspiracy is a separate offense.

THE DEFENDANT:  Oh, okay.

THE COURT:  Aiding and abetting apply to the Counts 2 and 3.

THE DEFENDANT:  It's a -- it's the third count, correct.

THE COURT:  And let's see, Count 2 and Count 3 charge you with aiding and abetting also.  But Count 1 is a violation of the Federal Statute Title 18 United States Code Section 1349.  And the conspiracy alleged in Count 1 is set forth on page three of your indictment and it says, "From in or about June 2020 through at least September 2010 in the Eastern District of Pennsylvania you knowingly and willfully conspired and agreed together with Otis Johnson and others, known and unknown to the Grand Jury to knowingly and willfully execute and attempt to execute a scheme or artifice to defraud Oroton, Stout Street and National Capital, which are mortgage lending businesses and to obtain monies owned by and under the care, custody and control of these mortgage lending businesses by means of materially false and fraudulent pretenses, representations and promises in violation of 1344."  And that's what you're charged with in Count 1.

4

THE DEFENDANT:  I understand.

THE COURT:  Do you understand?

THE DEFENDANT:  I understand what I am charged.

THE COURT:  All right.  No, do you understand that the United States Sentencing Commission has issued Sentencing Guidelines that will be used in determining your sentence if you are found guilty?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  And with respect to Count 1 that we just went over, do you understand that if you are found guilty of the crime charged in Count 1, which is the conspiracy to commit bank fraud, the Court must impose a special assessment of $100, and could sentence you to as many as 30 years imprisonment and fine you as much as one million dollars or twice the amount of gain or loss that was the object of the conspiracy.  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  In addition, and this being a Class B felony, you can face up to five years supervised release after release from imprisonment.  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  In Count 2, which charges you with the actual bank fraud, and the bank that's -- it says from about in or about June 2010 to at least September 2010 in the Eastern District of Pennsylvania, you and Otis Johnson and others knowingly executed and aided and abetted the execution of a scheme to defraud Stout Street, which is a mortgage lending business, and that's in violation of Title 18 United States Code Section 1344 and 2, 2 being the aiding and abetting statute, but you are familiar with that?

THE DEFENDANT:  Yes, sir, I have the indictment here.

THE COURT:  All right.  And Section 1344 charges you with bank fraud, and if you're found guilty of the crime charged in Count 2, the Court must impose an assessment, special assessment of $100, and can sentence you to as many as 30 years in prison and fine you as much as a million dollars or twice the amount of the gross scheme and loss.  That's the subject of that count.  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  Count 3 charges you with bank fraud and it says, "On or about -- in or about August 2010 through at least September 2010 in the Eastern District of Pennsylvania you, together with Otis Johnson and others knowingly executed and aided and abetted the execution of a scheme to defraud National Capital, a mortgage lending business and all of that violates Title 18 United States Code Section 1344 and 2."

Now, in that count you face a -- the Court must impose an assessment of $100.  This is if you are found guilty, I just want you to understand that.  You are presumed innocent at this point, but I have to explain all of this to you.

THE DEFENDANT:  Okay.

THE COURT:  The Court must impose an assessment of a hundred dollars and can sentence you to as many as 30 years in prison and fine you as much as a million dollars or twice the amount of the gross scheme or loss associated with the offense.

In addition Counts 2 and 3 carry again a five-year period of supervised release.  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.

THE DEFENDANT:  Your Honor, I'm sorry.

THE COURT:  If you're found guilty of the crimes in Count 1, 2, and 3 or one or more of those crimes the Court can order the sentence to be served consecutively, that is, one after another.  Do you understand?

THE DEFENDANT:  Yes, that would be 90 years.

THE COURT:  Yeah, if you're found guilty in all three counts you face up to 90 years imprisonment -- I guess it would be a three million dollar fine or twice the gross scheme or loss, five years supervised release and a $300 special assessment. Do you understand?

THE DEFENDANT:  Yes, sir.

(Doc. No. 251 at 5-10.)  The Court continued by determining whether Defendant understood the implications associated with self-representation, defenses to the charges, the Federal Rules of Evidence and of Criminal Procedure pertinent to the case, and then advised him that it would be unwise for Defendant to represent himself.

THE COURT:  All right.  Now, do you understand that if you represent yourself you are on your own.  I cannot tell you or even advise you how you should -- as to how you should try your case.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Do you understand -- do you know what defenses there might be to the -- let me restate that.  Do you know what defenses there might be to the offenses with which you were charged?

THE DEFENDANT:  I have a general idea, yes.

THE COURT:  Do you understand that an attorney may be aware of ways of defending against these charges that may not occur to you since you are not a lawyer?

THE DEFENDANT:  Yes, I understand that.

THE COURT:  Do you understand that I cannot give you any advice about these matters?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Are you familiar with the Federal Rules of Evidence?

THE DEFENDANT:  The federal law --

THE COURT:  The Federal Rules of Evidence?

THE DEFENDANT:  Some, but not all.

THE COURT:  Well, do you understand that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial, and that in representing yourself you must abide by these very technical rules and that they will not be relaxed for your benefit?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Are you familiar with the Federal Rules of Criminal Procedure?

THE DEFENDANT:  Some, but not all.

THE COURT:  Do you understand that these rules govern the way in which a criminal trial is -- criminal action is tried in federal court?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Do you understand that you must follow these rules and that they will not be relaxed for your benefit?

THE DEFENDANT:  I wasn't asking for anything.  I understand, yes.
. . .
THE COURT:  Now, do you understand that you must proceed by calling witnesses and asking them questions, and that except when and if you yourself testify you will not be permitted to tell the jury matters that you wish them to consider as evidence?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Do you understand that it may be easier for an attorney to contact potential witnesses, gather evidence and interview and question witnesses than it may be for you?

THE DEFENDANT:  Yes, I understand that.

THE COURT:  I must advise you that in my opinion a trained lawyer would defend you far better than you can defend yourself.  I think it unwise of you to try to represent yourself.  You are not familiar or totally familiar with the law, and you're not totally familiar with court procedure, and you're not totally -- you're not familiar with the Rules of Evidence and I strongly urge you not to try to represent yourself.  Do you understand?

THE DEFENDANT:  Yes, sir.

(Id. at 11-13.)

The Court next explained to Defendant that a criminal jury composed of twelve members of the community must be unanimous to find him guilty and that he may waive his right to a jury trial.  (See id. at 13.)  And the Court assessed the voluntariness of Defendant's decision to represent himself:

THE COURT:  All right.  Now, has anybody made any promises to you to get you to represent yourself?

THE DEFENDANT:  No, sir.

THE COURT:  Has anybody made any threats to get you to represent yourself?

THE DEFENDANT:  No, sir.

THE COURT:  Again, is your decision to represent --

THE DEFENDANT:  That is correct, sir.

THE COURT:  -- yourself entirely voluntary?

THE DEFENDANT:  Yes, sir.

(Id. at 14.)  Then, Assistant United States Attorney Joel Goldstein ("AUSA Goldstein") stated:

> The defendant is handicapped in another important way that needs to be colloquyed, and that is this, the discovery in this case is voluminous both in terms of what has been provided to the defense and also to what has been made available to the defense.

> Discovery was provided by Mr. Hetznecker at the time, he was representing the defendant.  Mr. Hetznecker not only received that discovery but availed himself the opportunity to come in and inspect other documents.

> To the Government's knowledge defendant is wholly unfamiliar with this discovery and it would be impossible for him to get up to speed on that discovery between now and the trial date which is two weeks hence.  So I think the defendant ought to be closely colloquyed on the fact that he is voluntarily and knowingly taking on that significant disadvantage.

(Id. at 14-15.)  As a result, the Court continued its colloquy with Defendant:

THE COURT:  Well, Mr. Glenn.

THE DEFENDANT:  I understand, sir.  We can proceed.

THE COURT:   you heard what counsel for the Government said?

THE DEFENDANT:  Yeah, I heard.

THE COURT:  All right.  And despite of what he said about the volume of discovery you want to proceed with the case?

THE DEFENDANT:  Yes.  I thought that they had turned everything over, but I understand that they're -- this must be Jencks material of [sic] something to that effect that they wanted to bring in after or during trial.  So I do understand that they have the right to do so, so I cannot fight that in any kind of way.  I just have to see what it is.

THE COURT:  Okay.  You're referring to Jencks material?

[AUSA] GOLDSTEIN:  I'm referring to the entire discovery package, Your Honor, and again all this material was turned over to Mr. Hetznecker.  Now, presumably Ms. [Susan] Lin either has that discovery or was in the process or attending [sic] to retrieve it from Mr. Hetznecker.[2]

THE COURT:  Mr. Glenn, you know what's in the discovery that you have received so far, right?

THE DEFENDANT:  Are you talking to me or Ms. Lin?

THE COURT:  You.

THE DEFENDANT:  I only received four disk --

THE COURT:  Okay.

THE DEFENDANT:   and then I turned those disks over to Ms. Lin and then she said that she received some additional disks, something about some phone calls that I made or something like that.  I don't know if that's what he's talking about.  But from what I understand, it was four disks that I had and it had 4300 pages or something like that, so I'm assuming that's the same thing.

THE COURT:  Okay.

THE DEFENDANT:  Okay.

[AUSA] GOLDSTEIN:  Regarding -- I'm sorry, go ahead.

[SUSAN] LIN:  If I may interject just so that the record is absolutely clear.  There was discovery that was made available to me through Cornerstone.  That was the service that Mr. Hetznecker had contracted with in order to help organize discovery and make it more easily viewable for counsel.

And that it how I have access to that discovery.  That is not -- that's 35,000-some pages, that is not material that has been printed out and given to Mr. Glenn.

[AUSA] GOLDSTEIN:  Your Honor, what Mr. Glenn is referring to is, there were prison calls that were obtained by the Government and as a matter of just simply completeness I've sent those over to Ms. Lin last week to make sure that that was in the defense camp.  And Ms. Lin is correct that the discovery -- that that was just a minor piece of evidence that was provided last week.  There was huge volume of

---

2   Susan Lin, Esquire, replaced Paul Hetznecker, Esquire, in representing Defendant in this case. Defendant sought the termination of Hetznecker and the Court permitted him to withdraw from his representation of Defendant.

evidence, some 35,000 pages I believe is correct of material of which Mr. Glenn is not referring to.

THE DEFENDANT:  Did you give the 35 pieces [sic] of material to Ms. Lin?

[SUSAN] LIN:  If I could respond to that question.

THE COURT:  Ah-huh.

[SUSAN] LIN:  Mr. Hetznecker had it, Mr. Hetznecker provided it to Cornerstone and that is how I have been accessing it is via Cornerstone.

THE COURT:  Okay.

[SUSAN] LIN:  I can get the disks from Cornerstone or get it back into disk format. Right now it's on some --

THE COURT:  Okay.

[SUSAN] LIN:  -- online format.

THE COURT:  Well, give it to Mr. Glenn.  He wants a trial.  Okay?

[SUSAN] LIN:  35,000 pages.

THE DEFENDANT:  I didn't know.  I've got to do what I got to do.

THE COURT:  Okay.  Mr. Glenn is a very intelligent man, he wants a trial, then get him all the discovery now.
. . .
THE COURT:  Now, again, knowing the size of discovery, do you still want to represent yourself?

THE DEFENDANT:  Yes, and I had some other issues I wanted to cover as far as some motions I wanted to put in if that's okay with Your Honor.

THE COURT:  All right.  Well, let me finish with the waiver.

THE DEFENDANT:  Okay.  Thank you.

THE COURT:  Okay?

[AUSA] GOLDSTEIN:  Nothing further insofar as the waiver is concerned, sir.

THE COURT:  Okay.

THE COURT:  Now, Mr. Glenn, in light of the penalties you might suffer if you're found guilty, and in light of all the difficulties in represent[ing] yourself, do you still desire to represent yourself and give up your right to be represented by a lawyer?

THE DEFENDANT:  That is correct, yes.

THE COURT:  All right.  Are you making this decision freely and does it reflect your personal desire?

THE DEFENDANT:  It reflects my personal desire and I'm going to do everything to fight this case as best I can.

THE COURT:  All right.  Do you have any questions or you want me to clarify or explain further anything

THE DEFENDANT:  No, I'm very clear.

THE COURT:  Let me finish my question, okay?  Do you have any questions or do you want me to clarify or explain further anything that we have discussed here?

THE DEFENDANT:  I'm clear, Your Honor.

THE COURT:  All right.  Now, we have a trial date of October 24th.  Is that the day you want to go to trial?

THE DEFENDANT:  That's the date.

THE COURT:  All right.  Okay, then I'll find that Mr. Glenn has knowingly and voluntarily waived his right to counsel and I find that he is competent to do so and competent to stand trial so now you will be representing yourself.

(Id. at 14-20.)  The Court asked all fourteen questions recommended by the Third Circuit in

Peppers.  The Court granted Defendant's request to proceed pro se and represent himself at trial.

(See Doc. No. 111.)

Then, on February 23, 2017, after an eight-day jury trial during which Defendant

represented himself, he was found guilty on all three counts of the Indictment.  (See Doc. No. 141.)

On March 13, 2017, Defendant filed a pro se Motion for Judgment of Acquittal or for a New Trial

on insufficiency of the evidence grounds.  (Doc. No. 151.)  On August 24, 2018, the Court denied

the Motion.  (Doc. Nos. 232, 233.)  On August 29, 2018, Defendant was sentenced to 168 months'
imprisonment, followed by a supervised release term of five years, and was ordered to pay
$981,717.70 in restitution as well as a special assessment of $300.  (Doc. No. 237.)

On August 31, 2018, Defendant timely filed a Notice of Appeal.  (Doc. No. 238.)  While
his appeal was pending, Defendant filed a second Motion for Judgment of Acquittal and/or New
Trial and a Supplement to the Motion, claiming that "newly discovered evidence clearly
establishes that [he] is not guilty of bank fraud . . . ."  (Doc. Nos. 259 at 2; 260 at 1-2.)  As a result
of Defendant filing his Motion while his appeal was pending, the Third Circuit stayed his appeal
pending this Court's disposition of the Motion.  (See Doc. No. 264.)  On October 9, 2019,
Defendant's second Motion for Judgment of Acquittal and/or New Trial (Doc. No. 259), including
its Supplement (Doc. No. 260), was denied.  (Doc. Nos. 290, 291.)  Accordingly, on November 1,
2019, the Third Circuit lifted the stay on Defendant's appeal.  See United States v. Glenn, No. 18-
2929, Order (3d Cir. Nov. 1, 2019).

On appeal, Defendant advanced three arguments.  First, Defendant argued that "the District
Court committed plain error when it failed to instruct the jury on an essential element of the bank
fraud offense:  whether the victims were mortgage lending businesses."  Glenn, 846 F. App'x at
112.  Second, and relatedly, Defendant contended that "one interstate mortgage transaction . . .
was not sufficient to make the institutions mortgage lending businesses."  Id. at 113.  Third,
Defendant asserted that "his conspiracy conviction still cannot stand because the government
failed to prove that Oroton, in particular, was in the mortgage lending business, and the jury's
general verdict on conspiracy may have rested solely on Glenn's dealings with Oroton."  Id. at
112-14.

The Third Circuit rejected all three arguments.  Id. at 113-14.  Regarding the first argument, the Third Circuit held that this Court did not commit plain error because "there was 'overwhelming evidence' showing that '[n]o reasonable juror could conclude' that the victims were not mortgage lending businesses, as representatives from each of the three victim-entities testified that their businesses engaged in mortgage lending activities."  Id. at 113 (footnotes omitted).  Discussing the second argument, the court held that "[t]here is no statutory requirement . . . to show that an institution has a large volume of mortgage business or transactions.  An organization engaged in such business 'even for a brief time' qualifies as a mortgage lender."  Id.  And the Third Circuit stated the following concerning Defendant's third argument:

> Glenn contends that the bank fraud statute does not consider every financial transaction of the entity, but only those that involve mortgages.  He further argues that Oroton did not grant him a mortgage loan, but merely considered extending him funds as part of an arbitrage transaction.  This argument fails because we have held that the fraud need not "occur in connection with the same transaction that places the entity within the definition of [a] financial institution."  Additionally, as explained above, a large volume of business is not a statutory requirement for an entity to qualify as a mortgage lending business.  After viewing the record in the light most favorable to the government, we find that a rational trier of fact could have found that Oroton was a mortgage lender.

Id. at 114.  Consequently, the Third Circuit affirmed Defendant's sentence.  Id.  Defendant then filed a petition for a writ of certiorari in the United States Supreme Court.  It was denied on January 10, 2022.  See Glenn v. United States, 142 S. Ct. 831 (2022).

### C.   Defendant's § 2255 Motion

On November 21, 2022, Defendant filed the instant § 2255 Motion.  (Doc. No. 357.)  He argues that his sentence should be vacated and that the Indictment should be dismissed because his counsel, who was appointed to represent him on appeal before the Third Circuit, was constitutionally ineffective in violation of the Sixth Amendment to the United States Constitution for (1) failing to "raise the jurisdictional issue that the Indictment fails to allege that either of the

'victims' [are] . . . lender[s] of 'federally related mortgages' . . ." and (2) failing to object to the Court's colloquy with Defendant to determine whether he knowingly and voluntarily waived his right to trial counsel.  (Id. at 4-6.)

## III.   STANDARD OF REVIEW

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002).  Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside or correct the sentence" where, inter alia, the sentence imposed was in violation of the Constitution or laws of the United States or the sentence was otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

"Under 28 U.S.C. § 2255(b), '[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon[.]'" United States v. Haisten, 50 F.4th 368, 372 (3d Cir. 2022) (emphasis in original) (quoting 28 U.S.C.               § 2255(b)); see also United States v. Valenta, 2022 WL 265876, at *3 n.4 (3d Cir. Jan. 28, 2022) ("[C]laims in a § 2255 motion should only be 'disposed of without further investigation' where they do not, 'at least on their face[,] present substantial issues upon which the District Court could have proceeded.'") (quoting United States v. Thomas, 221 F.3d 430, 438 (3d Cir. 2000)).

## IV.   ANALYSIS

In his Motion, Defendant argues that his conviction must be vacated because his appellate counsel was unconstitutionally ineffective for two reasons.  First, Defendant argues that his appellate counsel failed to argue on appeal that the Indictment was "jurisdictionally defective"

because it did not allege that the victims issued "federally related mortgages." (Doc. No. 357 at 4.) Second, he argues that his counsel was ineffective for failing to argue that the Court's colloquy with Defendant to determine whether he waived his Sixth Amendment right to counsel was deficient. (Id. at 5-6.) For reasons that follow, both arguments are without merit.

In <u>Haisten</u>, the Third Circuit explained the standard for ineffective assistance of counsel claims:

> [An] ineffective-assistance-of-counsel claim is subject to the familiar two-prong test in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984): [the claimant] must show, first, "that counsel's performance was deficient," and, second, "that the deficient performance prejudiced the defense." Counsel's performance is not deficient under <u>Strickland</u> if it is the product of a strategic litigation choice. <u>Gaines v. Superintendent Benner Twp. SCI</u>, 33 F.4th 705, 712 (3d Cir. 2022). But, for <u>Strickland</u> claims, too, "a district court must hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" <u>United States v. Arrington</u>, 13 F.4th 331, 334 (3d Cir. 2021) (alteration in original) (quoting 28 U.S.C. § 2255(b)), <u>cert. denied</u>, 142 S. Ct. 1431 (2022). "If . . . a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under <u>Strickland</u>, then further factual development in the form of a hearing is required." <u>Id.</u>

50 F.4th at 372-73.

To establish deficient performance under the first prong of <u>Strickland</u>, a court must "look to 'the facts of the particular case, viewed as of the time of counsel's conduct,' <u>Strickland</u>, 466 U.S. at 690, and evaluate whether counsel's performance 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'" <u>Vickers v. Superintendent Graterford Sci</u>, 858 F.3d 841, 850 (3d Cir. 2017). To establish prejudice under the second prong of <u>Strickland</u>, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Arrington</u>, 13 F.4th at 335 (quoting <u>Strickland</u>, 466 U.S. at 694).

"[A] hearing must be held if the claim 'does not conclusively fail either prong of the Strickland test." Haisten, 50 F.4th at 373.  In other words, if an ineffective assistance of counsel claim conclusively fails either prong under Strickland, no hearing is necessary.  Both of Defendant's arguments, however, fail under Strickland and no hearing is required.

### A.   Appellate Counsel Was Not Constitutionally Ineffective for Failing to Argue That the Indictment Was "Jurisdictionally Defective"

Defendant asserts that a "mortgage lending business" must also "make in whole or in part a federally related mortgage loan."  (Doc. No. 357 at 5 (citing 18 U.S.C. § 20).)  According to Defendant, because the Indictment failed to allege that Oroton, Stout Street, and National Capital are lenders of "federally related mortgages," they do not constitute "mortgage lending business[es]" and for this reason he cannot be found guilty of bank fraud.  (Id.)  However, Defendant's appellate counsel was not constitutionally ineffective for failing to argue on appeal that the Indictment was "jurisdictionally defective" because his argument is belied not only by a plain reading of 18 U.S.C. §§ 20, 27, 1344, and 1349, but also by the Third Circuit's reasoning in its Opinion affirming the denial of his Motion for Judgment of Acquittal and/or New Trial.  (Doc. No. 357 at 4.)

Defendant was convicted of two counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts Two and Three), and one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count One).  18 U.S.C. § 1344 provides that:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. Section 1349 makes it a criminal offense to conspire to commit bank fraud. See id. § 1349 ("Any person who . . . conspires to commit any offense under this chapter [including bank fraud, see id. § 1344] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy.").

18 U.S.C. § 20 provides, in pertinent part:

As used in this title, the term "financial institution" means . . .
(10) a mortgage lending business (as defined in section 27 of this title) or any person or entity that makes in whole or in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974 . . . .

Id. § 20(10) (emphasis added). A plain reading of the statute shows that a financial institution as defined in 18 U.S.C. § 20(10) is either a "mortgage lending business" or "any person or entity that makes in whole or in part a federally related mortgage loan . . . ." Id. Thus, since the "financial institution" alleged to have been defrauded may be a "mortgage lending business" by itself, it is not necessary that the "mortgage lending business" also be shown to "make[] in whole or in part a federally related mortgage loan . . . ." Id.

Section 27 defines a "mortgage lending business" as "an organization which finances or refinances any debt secured by an interest in real estate, including private mortgage companies and any subsidiaries of such organizations, and whose activities affect interstate or foreign commerce." Id. § 27. And as noted supra, the Indictment alleges that Oroton, Stout Street, and National Capital are "mortgage lending business[es] that engaged in interstate commerce and provided loans to fund the purchase of real estate, including residential single family dwellings." (Doc. No. 1 at 2-3.) Because these three businesses "finance[] . . . [a] debt secured by an interest in real estate" and

their "activities affect interstate . . . commerce," they constitute "mortgage lending businesses."

18 U.S.C. § 27.

      Tellingly, in its Opinion affirming Defendant's sentence, the Third Circuit held:

> there was "overwhelming evidence" showing that "[n]o reasonable juror could
> conclude" that the victims were not mortgage lending businesses, as representatives
> from each of the three victim-entities testified that their businesses engaged in
> mortgage lending activities.

Glenn, 846 F. App'x at 113. Because Oroton, Stout Street, and National Capital are "mortgage

lending businesses," they also constitute "financial institutions" as defined in 18 U.S.C. § 20, the

defrauding of which underlies the predicate offense of bank fraud and conspiracy to commit bank

fraud, see 18 U.S.C. §§ 1344, 1349. And, as noted by the Third Circuit in affirming Defendant's

sentence, the fraud need not occur in connection with the same transaction that places the entity

within the definition of a financial institution. There is no requirement that the fraud be part of a

federally related mortgage loan as opposed to the loans secured by Defendant.

      Thus, there is no "jurisdictional defect" in the Indictment and counsel's alleged failure to

present this argument on appeal before the Third Circuit neither falls below an objective standard

of reasonableness nor prejudices Defendant by creating a reasonable likelihood that he would be

found not guilty at trial. Because Defendant's ineffective assistance of counsel claim regarding

the Indictment's "jurisdictional defect" conclusively fails to establish either prong under

Strickland, no hearing on Defendant's claim need be held.

      **B.    Appellate Counsel Was Not Constitutionally Ineffective for Failing
to Raise on Appeal an Objection to the Court's Colloquy
with Defendant to Determine Whether He Knowingly
and Voluntarily Waived His Right to Trial Counsel**

      Defendant claims that his appellate counsel should have challenged the colloquy conducted

by the Court pursuant to United States v. Peppers, 302 F.3d 120 (3d Cir. 2002). In particular,

Defendant argues that the Court "failed to query [sic] the defendant as to his understanding of what i[t] means to 'aid and abet' a crime under 18 U.S.C.[] § 2, as opposed to being a conspirator." (Doc. No. 357 at 5.)  Defendant contends that his lack of understanding precluded a "knowing[] and intelligent[]" waiver of his right to counsel.  (Id. at 6.)  Defendant asserts that if his appellate counsel "reviewed the transcript of the pro se colloquy . . ., counsel would have included this 'structural defect' as an issue in defendant's direct appeal."  (Id.)  Defendant's argument is without merit, however, because for reasons stated infra appellate counsel was not constitutionally ineffective for failing to raise on appeal the alleged insufficiency of the Court's pro se colloquy with Defendant.

### 1.    Legal Framework for Requests to Proceed Pro Se

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."  United States v. Taylor, 21 F.4th 94, 99 (3d Cir. 2021) (internal quotation marks omitted) (quoting Faretta v. California, 422 U.S. 806, 819 (1975)).  In Taylor, the Third Circuit explained that the Sixth Amendment:

> guarantees a criminal defendant the right to decline the assistance of counsel and to represent himself.  See [Faretta, 422 U.S.] at 819-21; [United States v.] Jones, 452 F.3d [223,] 228 [(3d Cir. 2006)].  Of course, to exercise this right, a defendant must relinquish his right to counsel and its accompanying benefits.  Peppers, 302 F.3d at 129.  Thus, he must knowingly, intelligently, and voluntarily waive his right to counsel before a court may allow him to proceed pro se.  Buhl v. Cooksey, 233 F.3d 783, 789 (3d Cir. 2000).

Id. at 99-100.

In the Third Circuit, three requirements that must be met before a court can grant an individual's request to proceed pro se:

1. The defendant must assert his desire to proceed pro se clearly and unequivocally.

2. The court must inquire thoroughly to satisfy itself that the defendant understands "the nature of the charges, the range of possible punishments, potential defenses,

technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved."[3]

3.  The court must "assure itself" that the defendant is competent to stand trial.

United States v. Banks, 55 F.4th 246, 254 (3d Cir. 2022) (quoting Peppers, 302 F.3d at 132) (internal citations omitted).

Only the second requirement noted above is in dispute here.  In Peppers, the Third Circuit set forth "a useful framework for the court to assure itself that a defendant's decision to proceed pro se is knowing and voluntary."  302 F.3d at 136.  The Third Circuit recommended that district courts ask the following fourteen (14) questions:

1.  Have you ever studied law?

2.  Have you ever represented yourself in a criminal action?

3.  Do you understand that you are charged with these crimes:  [state the crimes with which the defendant is charged]?

4.  Do you understand that the U.S. Sentencing Commission has issued sentencing guidelines that will be used in determining your sentence if you are found guilty?

5.  Do you understand that if you are found guilty of the crime charged in Count 1, the Court must impose an assessment of $  , and could sentence you to as many as years in prison and fine you as much as $  ? [Ask defendant this question for each count of the indictment or information.]

6.  Do you understand that if you are found guilty of more than one of these crimes, this Court can order that the sentences be served consecutively, that is, one after another?

7.  Do you understand that if you represent yourself, you are on your own?  I cannot tell you -- or even advise you -- as to how you should try your case.

7a.  Do you know what defenses there might be to the offenses with which you are charged?  Do you understand that an attorney may be aware of ways of defending

---

[3]  Stated differently, "at a minimum, the inquiry must address whether the defendant understands 'the nature of the charges, the statutory offenses included within them, and the range of allowable punishments thereunder' to enable the trial court to assure itself that the defendant knowingly and intelligently waives his right to counsel."  Taylor, 21 F.4th at 103 (quoting United States v. Booker, 684 F.3d 421, 425-26 (3d Cir. 2012)).

against these charges that may not occur to you since you are not a lawyer?  Do you understand that I cannot give you any advice about these matters?

8.  Are you familiar with the Federal Rules of Evidence?*

8a.  Do you understand that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and that, in representing yourself, you must abide by those rules?

9.  Are you familiar with the Federal Rules of Criminal Procedure?*

9a.  Do you understand that these rules govern the way a criminal action is tried in federal court?  Do you understand that you must follow these rules?

10.  Do you understand that you must proceed by calling witnesses and asking them questions, and that, except when and if you yourself testify, you will not be permitted to tell the jury matters that you wish them to consider as evidence?

10a.  Do you understand that it may be much easier for an attorney to contact potential witnesses, gather evidence, and question witnesses than it may be for you?

11.  I must advise you that in my opinion a trained lawyer would defend you far better than you could defend yourself.  I think it unwise of you to try to represent yourself.  You are not familiar with the law.  You are not familiar with court procedure.  You are not familiar with the rules of evidence.  I strongly urge you not to try to represent yourself.

12.  Now in light of the penalties that you might suffer if you are found guilty, and in light of all of the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?

13.  Are you making this decision freely, and does it reflect your personal desire?

14.  Do you have any questions, or do you want me to clarify or explain further anything that we have discussed here?

Id. at 136-37.  The Third Circuit continued by stating that:

> If the answers to the foregoing questions satisfy the court that the defendant knowingly and voluntarily desires to proceed pro se, the court would then state the necessary conclusions, such as:
>
> > I find that the defendant has knowingly and voluntarily waived the right to counsel.  I will therefore permit the defendant to represent himself (or herself).
>
> *As is evident from the follow-up questions, the purpose of inquiring as to the defendant's knowledge is only to ascertain the extent to which the defendant understands the procedure that is to be followed during the course of the trial, not to assess his legal knowledge or training to determine his ability to represent himself well.

Id. at 137.[4]

## 2.      Defendant Knowingly and Voluntarily Waived
His Right to Counsel

On October 11, 2016, the Court conducted the colloquy with Defendant to determine whether it was his clear and unequivocal request to proceed pro se.  (See Doc. No. 111.)  The Court asked Defendant all fourteen questions referenced in Peppers as a "useful framework" to assure itself that he "underst[ood] 'the nature of the charges, the statutory offenses included within them, and the range of allowable punishments thereunder' . . . ." Taylor, 21 F.4th at 103 (quoting Booker, 684 F.3d at 425-26).  Specifically, the Court went over each Count charged against Defendant in the Indictment and advised him that an attorney would represent him far better and may defend against the charges in a way that Defendant would not contemplate.  (Doc. No. 251 at 11-13.)

In addition, the Court colloquyed, at the Government's request, Defendant on the complexity and volume of discovery in the case and the technical difficulties associated with sifting through those materials.  Specifically, the Court asked Defendant:  "Now, again, knowing the size of discovery, do you still want to represent yourself?"  (Id. at 19.)  After the Court asked Defendant all questions recommended in Peppers, the additional questions regarding the amount of discovery, and whether he had any further questions or required further clarification of any question, Defendant stated that he was "very clear" and that he was "going to do everything to fight this case as best [he] can."  (Id. at 20.)

More specifically, the colloquy conducted by the Court with Defendant on his waiver of his right to counsel shows that he knew conspiracy as charged in Count One was not an "aiding

---

[4]   The asterisk included in the last quoted paragraph from Peppers refers to the questions regarding the defendant's knowledge of the Federal Rules of Evidence and Criminal Procedure.

and abetting" charge.  Aiding and abetting was included in Counts Two and Three and these charges were read to Defendant.  After the Court read the charge in Count Two, Defendant acknowledged that he was familiar with the charge, which includes aiding and abetting.  If he was familiar with aiding and abetting in Count Two, he would also be familiar with aiding and abetting in Count Three.  Also, no court decision requires a definition of aiding and abetting be given to a defendant during a colloquy waiving the right to counsel.

Finally, Defendant's responses to the Court's colloquy on the three charges and other matters assured the Court that he knowingly and voluntarily waived his right to counsel and desired to proceed to trial by representing himself.  Consequently, for all the above reasons, appellate counsel's failure to raise on appeal an error in the Court's colloquy neither fell below an objective standard of reasonableness nor would have changed the outcome of the trial had the Court overridden his request to proceed pro se.  Stated differently, Defendant has not shown that he was prejudiced in any way by the Court's colloquy of him.  Consequently, Defendant's claim conclusively fails under both prongs of Strickland and no hearing on his claim is required.

## V.   CONCLUSION

For the foregoing reasons, Defendant's pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 357) will be denied.  A certificate of appealability will not issue because Defendant failed to make a substantial showing of the denial of a constitutional right.  An appropriate Order follows.